CASE 32.—ACTION BY JOHN E. SHEEGOG'S ADMINISTRATOR AGAINST THE ILLINOIS CENTRAL R. R. CO. FOR CAUSING THE DEATH OF PLAINTIFF'S INTESTATE.—June 20.

## Illinois Central Ry. Co. v. Sheegog's Admr.

Appeal from Union Circuit Court.

J. W. HENSON, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Master and Servant—Injuries to Servant—Actions—Evidence. —In an action against a railroad for the death of a locomotive engineer, evidence examined, and held to warrant the refusal of a peremptory instruction for the defendant.

2. Death—Punitive Damages—Grounds—Gross Negligence.—Under Const. Sec. 241, providing for a right of action for the death of a person caused by negligent or wrongful act, and the express provisions of Ky. Stats., 1903, c. 1, sec. 6, where a railroad was guilty of gross negligence in running a defectively equipped train over an unsafe track at a high rate of speed, it was proper to submit to the jury the question of punitive damages.

Illinois Central Ry. Co. v. Sheegog's Admr.

3.  Removal of Causes—Proceedings—Duty of Courts.—Where a petition is filed for the removal of a case to the Federal court, it is the duty of the judge of the State court to determine from the petition and record, whether or not there is presented a Federal case, and, if so, he should remove it to the Federal court, and that court should hear the proof on the jurisdictional facts, and determine whether the State or Federal court has jurisdiction.

4.  Statutes—Pleading Private Acts.—Civ. Code Prac., Sec. 119, provides that, "in pleading a private statute, it shall be sufficient to refer to it by stating its title and the day on which it became a law." Held, that a petition for the removal of a case to the Federal court was defective, which did not state the title of a private statute, nor its contents, but merely the petitioner's conclusions as to its contents.

5.  Railroads—Leases—Liability of Lessor.—Under Const. Sec 203, providing that no corporation shall lease or alienate any franchise so as to relieve the franchise or property held thereunder from the liability of the lessor or lessee, contracted or incurred in the operation of the franchise, or any of its privileges, a railroad which had received a franchise from the State could not by a lease exempt itself from responsibility for the torts of itself and lessee.

6.  Same—Liability of Lessor to Lessee's Servants.—While the lessor of a railroad is not liable to the employes of the lessee for torts of the lessee resulting from the negligent operation and handling of its trains and the general management of the leased property, it is liable to them for an injury resulting from the negligent omission of a duty owed to the public, such as the proper construction of the road.

TRABUE, DOOLAN & COX for appellant.

J. M. DICKINSON, HENRY D. ALLEN and LOCKETT & LOCKETT of counsel.

POINTS AND AUTHORITIES.

1.  No allegation of decedent's ignorance of alleged condition of the track is made, which renders the petition demurrable: Bogenschutz v. Smith, 84 Ky., 330; L. & N. R. R. Co. v. Mellott, 101 Ky., 215; Williams v. L. & N., 111 Ky., 825; Choctaw, etc., v. McDade, 191 U. S., 64.

2.  A peremptory instruction should have been granted.

Illinois Central Ry. Co. v. Sheegog's Admr.

Fencing not required, nor permitted at station: Ky. Stats., sec. 1792.

The mule was cause of collision and everything else remota causa, and not proxima causa: Louisville Gas Co. v. Kaufman & Straus, 105 Ky., 131; Hughes v. Railroad, 91 Ky., 531; Wintuska v. same, 14 Ky. Law Rep., 579; P., C., C. & St. L. Ry. Co. v. Lewis, 18 do., 957; Johnson v. E. T. V. & G., 18 do., 67; Nelling v. R. R. Co., 98 Iowa, 554; Coxe v. same, 102 Lowa, 711.

3. (a) Instruction second misleading in reference to roadbed and to rolling stock, and care to keep them in condition, the condition of roadbed and rolling stock not being proximate cause.

Also, erroneous in any reference to Durbin's duty.

(b) Erroneous in ignoring the relation between cause and effect permitting recovery for remote cause; and in ignoring causation.

(c) Sixth instruction, erroneous in referring to gross negligence: L. & N. R. R. Co. v. Creighton, 106 Ky., 42; 20 Ky. Law Rep., 1692; L. & N. R. R. Co. v. Taaffe's, 106 Ky., 535; 21 Ky. Law Rep., 64.

4. (a) Where fraudulent joinder is alleged and the facts alleged show a right of removal, the facts must be assumed true and the Federal court must try the issue: Dow v. Bradstreet, 46 Fed., 824; Arrowsmith v. N. & D. R. Co., 57 Fed., 165; Diday v. R. R. Co., 107 Fed., 565; Boatner v. Am. Ex. Co., 122 Fed., 714; Weaver v. Ry., 125 Fed., 155; Board v. Toronto Bank, 128 do., 167; Gustafson v. Co., 128 Fed., 85; Swann v. Mut. Res., 116 Fed., 232; Union Terminal v. C., B. & Q., 119 Fed., 209; I. C. R. R. v. Jones, 80 S. W., 484 (25 Ky. Law Rep., 31).

(b) An issue of fact involved in jurisdiction is triable in the Federal court alone: R. R. Co. v. Dunn, 122 U. S., 513, 517; R. R. v. Wangelin, 132 U. S., 599; Daughtry v. K. C., etc., 138 U. S., 298; I. C. R. R. Co. v. Jones, 26 Ky. Law Rep., 31; 80 S W., 484; see also cases cited supra.

(c) The good faith of the plaintiff in making untrue allegations can not avail him to defeat Federal jurisdiction: Diday v. Railroad, supra.

(d) Appellee's petition sufficiently indicates the purpose of the joinder of Durbin.

No cause for action is stated against Durbin: C., N. O. & T. P. R. R. v. Robinson, 25 Ky. Law Rep., 265; 74 S. W., 1061; Davis v. C., N. O. & T. P. R. R. v. Robinson, 25 Ky. Law Rep., 265; 116 Ky., 144; Gustafson v. Co., 128·Fed., 85; L. & P. Canal Co. v. Murphy, 9 Bush, 527; Swice's admr. v. M. & B. S. R. Co., 116 Ky., 253; Yeates v. I. C. R. R. Co., 139 Fed. Rep., 943; Axline v. Toledo, etc., Co., 138 Ibid., 169; See I. C. R. R. Co. v. Coley, Nov. 3, 1905.

Illinois Central Ry. Co. v. Sheegog's Admr.

## ADDITIONAL POINTS AND AUTHORITIES.

1. A case of negligence may exist where an instruction as to punitive damages would be erroneous, and the preliminary question is for the court: McHenry Coal Co. v. Sneddon, 98 Ky., 686; L. & N. R. R. Co. v. Creighton, 106 Ky., 42, 46; L. & N. R. R. Co. v. Taoffe's admr., Ibid., 535; Lexington, etc., Co. v. Fain, 25 Ky. Law Rep., 2243; Southern Ry. Co. v. Goddard (Nov. 29, 1905), 28 Ky. Law Rep.

2. Punitive damages admissible only when injury wanton or disregard of precaution for others' safety, wilful: McHenry, etc., Co. v. Sneddon, 98 Ky., 686; L. & N. R. R. Co. v. Kingman, 18 Ky. Law Rep., 83; Lexington, etc., Co. v. Fain, 25 Ky. Law Rep., 2243; Southern Ry. Co. v. Goddard (Nov. 29, 1905), 28 Ky. Law Rep., Milwaukee, etc., Co. v. Arms, 91 U. S., 495; Lake Shore, etc., Co. v. Prentiss, 147 U. S., 107; F. S. R. R. Co. v. Hirst, 30 Fla., 1; 32 Am. St. R., 33; 3 Sedow. Dam., 363; 1 Sutherland Dam., 724; 12 A. & E. En., 2d ed., 28.

HENDRICK & MILLER for appellee.

## POINTS AND AUTHORITIES.

1. Because of the fact that a great "hue and cry" has been raised in courts and legal circles about the supposedly "unpardonable sin" of preferring the State courts over Federal courts and of exercising the right expressly provided by Sec. 241 of the Constitution of Kentucky, and Sec. 6, Ky. Stats., whereby an action may be brought for the negligent or wrongful killing of an individual against both the principal and the agent whose negligence or wrongful act caused the death, and because even the Court of Appeals of Kentucky has seemed to be influenced by this systematic and designed clamor to such an extent as to speak, in some of its decisions upon the subject, of "artful subterfuges resorted to by pleaders to control jurisdiction" and of "trifling with the court, etc.," we have thought it not out of place in this brief to call the court's attention to what might be called the ethics of the question, and to show not only that we are simply exercising our constitutional rights and discharging our duty to our clients, but that we are doing the same thing that lawyers and litigants have done in thousands of other instances in suing principal and agent together; as in such cases as Hawkins v. Riley, 17 B. Mon., 101; Baird v. Shipman, 132 Ill., 16 and 7 L. R. A., 128; Stephen v. Wilson, etc., 24 Ky. Law Rep., 1832; Dixon v. C. & O. Ry., 178 U. S.,

131, and other cases too numeous to mention; and that as said by Chief Justice Fuller in the Dixon case, we are "performing a lawful act," and that our purpose in doing so cannot be inquired into, but on the other hand the whole doctrine that the corporation of another State has the right of removal on the ground of diversity of citizenship has no foundation in justice or common sense, and is the result of what Judge Thompson in his admirable work on Corporations denominates a "theft of jurisdiction;" Thompson on Corporation, vol. 6, p. 591; that the Supreme court of the United States, beginning with the opinion delivered by Chief Justice Marshall in the case of Bank v. Deveaux, 5 Cranch, 61, held and for six years continued to hold, that a corporation aggregate was not a citizen (Thomp. Cor., vol. 6, pp. 3909-10); that the idea grew out of the "habitual greed of jurisdiction" on the part of a certain character of judges and courts and the deliberate effort on the part of large railroad corporations "to defraud the courts of the various States and territories through which their road should lie" of jurisdiction, etc.; same work vol. 6, p. 5913; that the whole practice is an outrage upon litigants; that the perpetrators of fraud are as shown by the author cited, the corporation and parties who obstruct justice by dragging impecunious litigants, without right or reason, out of their home courts and vicinage to distant, and to them inaccessible tribunals; and that the charge of fraud against the lawyers and litigants who avail themselves of this constitutional right of joining the principal and agent in the same action, is not only unjust, but is a slander to which the courts should not lend a so willing and credent ear as some of them have seemed to lend. So much has been said about the fraud of joining an employe and the employer corporation as defendants, that the courts themselves have seemed almost to forget that is only the same thing which has been done, and which has been sanctioned, in a thousand other cases and situations from time immemorial; and we in behalf of simple justice ask a careful reading of this part of our brief. Thompson on Cor., vol. 6, pp. 5909-5910-5911-5913 and lastly 5949.

2. The cases cited by appellant to show this case removable, and holding a doctrine different from that heretofore announced by this court in the cases of I. C. R. R. Co. v. Jones, 26 Ky. Law Rep., 31; Rutherford v. I. C. R. R. Co., 27 Ky. Law Rep., 397, and other cases, are, none of them, authoritative, but are mainly decisions of district judges, many of them delivered prior to the decision of the Dixon case, but at last are decided upon the idea that the cases were removable upon an inspection of the face of the record.

3. "The State court must determine from the petition and rec-

ord whether or not there was presented a removable case:" Rutherford v. I. C. R. R. Co., 27 Ky. Law Rep., 397; I. C. R. R. Co. v. Jones, 26 Ky. Law Rep., 31, and many other cases—and

"The State court is only at liberty to inquire whether on the face of the record a case has been made which requires it to proceed no further."

Crehore v. O. & M. R. R. Co., 131 U. S., 240 (32 L. ed., 144), and —"A State court is not bound to surrender its jurisdiction of the suit till a case has been made which on its face shows that the petitioner has a right to transfer." Crehore case, supra, Stone v. South Carolina, 117 U. S., 50 (29 L. ed., 672); Stevens v. Nichols, 130 U. S., 230; Phoenix Ins. Co. v. Pechneh, 95 U. S., 183, and many other Supreme court cases.

4. Plaintiff had a right to join both the corporation and the agent thereof through whom the negligent acts were committed as defendant; and there is no misjoinder and plaintiff's motive in performing this lawful act cannot be inquired into. Const. of Ky., sec. 241, Ky. Stats., sec. 6; C. & O. R. R. Co., Dixon, 179 U. S., 131, and the two cases of C., N. O. & T. P. Ry. v. Cook's admr. and A. G. S. Ry. Thompson, decided by the Supreme court January 2, 1906; I. C. R. R. Co. v. Jones, supra, and Rutherford case, supra.

5. If the jurisdictional facts are stated in the petition for removal the jurisdiction at once passes from the State to the Federal court. Kansas City R. R. Co. v. Daughtry, 138 U. S., 298; and these jurisdictional facts cannot be inquired into in the State court. The jurisdictional facts in a case like this are two: diversity of citizenship and the involvment of an amount in excess of $2,000. If the petition and record do not affirmatively show the existence of these two facts the Federal court acquires no jurisdiction to inquire into the truthfulness or untruthfulness of the pleading in any other respect. Jones case, supra; Rutherford case, supra, and Whitcomb v. Smithson, 175 U. S., 635; Howe v. N. P. Ry. Co., 60 L. R. A., 949; also the Crehore, Stevens, Stone and Dixon cases cited above.

6. If the case is tried on the merits before a jury and plaintiff insists upon his contention of joint liability to the last, the fact that a peremptory instruction be given for the citizen defendants, joined, does not warrant the court in removing the case even upon a supplemental petition and bond tendered by the remaining defendant. Whitcomb v. Smithson, 175 U. S., 635; Howe v. N. P. R. R. Co., 60 L. R. A., 949 (Wash).

7. A cause of action is stated in the petition against the co-defendant, Durbin, who was a citizen of Kentucky at the time the

suit was filed. Chiles v. Drake, 2 Met., 146; 2 Ch. Pl., 650; Pierce's admr. v. I. C. R. R. Co., 27 Ky. Law Rep., 801.

8. A cause of action is stated against the Chicago, St. L. &N. O. R. R. Co., also a co-defendant, and a Kentucky corporation. The negligence charged against the lessor company being its negligence as to its track, fences and cattle guards, etc., the petition against it states a cause of action, as it owes the public, including the servants of the lessee, the duty of maintaining them, and cannot divest itself of this burden. McCabe's admr. v. M. & B. S. Ry., 112 Ky., 861.

The petition states that this defendant owns and controls the roadbed, etc., and this is not denied. The mere leasing, or the power to lease, does not mean the release of the lessor from liability—McCabe case, supra—and the terms of the lease are nowhere stated in the petition for removal nor in the answer of any defendant, and the lease itself is not filed and made affirmatively the right to remove; Stevens v. Nichols, 130 U. S., 230 (L. ed. 32, 914); Mansfield, etc., R. R. Co. v. Swan, 111 U. S., 379 (28 L. ed., 461); Mexican National R. R. Co. v. Davidson, 157 U. S., 201. The negligence complained of as against this defendant being not merely the negligence of the lessee, as to cars and appliances of the lessee under its control, but, being the negligence of the lessor in failing to maintain its track properly, the servant of the lessee has a right of action against the lessor. Swice v. M. & B. S. R. Co., 116 Ky., 253. This Swice case rests upon for its authority, and quotes as its principal authority the cases of Lee v. S. P. R. Co. (Cal.), 47 Pac., 932; 38 L. R. A., 71; 58 Am. St. Reps., 152, and the case of East Line ,etc., R. R. Co., Culbertson, 72 Tex., 375 (10 S. W., 706, 3 L. R. A., 567); 13 Am. St. Rep., 805, and these cases hold the very doctrine contended for here. In the Lee case the plaintiff was the servant of the lessee company and recovered of the lessor. See also Nugent v. Boston and M. R. Co., 80 Me., 62; Arrowsmith v. N. & D. R. Co., 57 Fed. Rep., 165; Ry. v. Curl, 28 Kansas, 622.

9. Civil Code of Kentucky and the decisions of this court permit servants of the lessee to sue lessee and lessor jointly upon same principle followed in I. C. R. R. Co. v. Jones; 26 Ky. Law Rep., 31; Kuhn v. Cen. Pas. Ry. Co., 86 Ky., 578; Rutherford v. I. C. R. R. Co., 27 Ky. Law Rep., 397, as in all these cases the respective defendants in each case bore different relationship to the defendant and were liable notwithstanding they owed different duties.

10. Failure of defendants to put cattle guards and maintain same at the termination of fences on each side of the track at public roads made them liable for killing caused hereby. Sec.

1793, Ky. Stats., McKhee v. Kuyn, 98 Ky., 209; 17 Ky. Law Rep., 794; McGhee v. Gaines, 98 Ky., 182; 17 Ky. Law Rep., 748; and more particularly Parish v. L. & N. R. R. Co., 1524—78 S. W., 186; also sec. 466, Ky. Stats., giving this right of action, and Hayes v. Mich. Cen. R. R. Co., 11 U. S., 228 (L. ed., 28:510), which decides the exact point, and holds that even if the statute provides that it is for the safety of cattle, still, its violation is evidence of negligence in a personal injury action.

11. If a party except to a decision of a court in granting or refusing any instruction all the instructions given and refused shall also be included in the bill of exceptions. Civil Code, Sec. 337, Subsec. 2. The bill of exceptions in this case on its face shows that only a part of the instructions given are included and that it includes, of the refused instructions, only those offered by the defendant, and appellants in their brief actually quote verbatim an instruction, the first and most important given, which is not included in the bill of exceptions. This court can therefore consider no objections to instructions.

12. The judge of the lower court failed to certify that the bill of exceptions contained all the evidence as required by Sec. 339, Civil Code, and exceptions and objections to the evidence cannot therefore be considered by this court. Most of same cannot be considered for another reason; and that is, that the specific errors relied upon must be stated in the grounds for a new trial. Slater v. Sherman, 5 Bush, 206, also 13 B., 297; 14 B., 297; 7 B., 235; 9 Ky. Law Rep., 467, and Jones v. Woocher, 90 Ky., 230; but the court's rulings as to the evidence are nevertheless shown to be correct.

13. Appellant is incorrect in his contention as to law of punitive damages. Sec. 6, Ky. Stats. But, the evidence in this case would have sustained punitive damages even under appellant's contention. Still, the jury gave compensatory damages only— $8,250 for the life of an intelligent, healthy, robust, industrious, sober and studious young man, 28 years of age, making $130 to $150 per month, with an expectancy of 30 to 35 years and prospects for advancement and promotion increasing his earning capacity.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This action was instituted by the administrator of John E. Sheegog, who was killed in the derailment of an engine and train of cars of which he was engineer at the time. The Chicago, St. Louis & New

Orleans Railroad Company, the owner and lessor of the road, Illinois Central Railroad Company, the lessee, and F. J. Durbin, the conductor in charge of the train, were made defendants to the action. It was alleged in the petition, in substance, that on the 7th day of May, 1903, his intestate was in the employment of the defendant, Illinois Central Railroad Company, as an engineer on one of its trains, and while in the performance of his duty, as such engineer, the train upon which he was engaged was, through the joint and gross negligence and carelessness of the three defendants herein, derailed, and his intestate thereby instantly killed. In the petition the negligence and concurrent negligence of each of the defendants is alleged with some particularity. We copy from it as follows: "At the time the defendant the Chicago, St. Louis & New Orleans Railroad Company was the owner of said roadbed, fences, right of way, trestles, and bridges where said accident happened, and the Illinois Central Railroad Company was the lessee of said railroad property and premises, and was the owner of the engines and cars, trains, and appliances by which the said intestate was killed, and was operating said road, trains, and engine, and the defendant F. J. Durbin, who is a citizen of Kentucky, was the conductor in the employment of the latter railroad company, and in charge of said train and engine and appliances, and the said intestate was required to obey, and was obeying and acting under, the orders of the said defendant F. J. Durbin. The plaintiff now says that, by the negligence of both of said companies, defendants hereto, the said roadbed, rails, track, cattle guards, ties, fence, and right of way of the said railroad was allowed to be, and for a long time had been, in a weak, rotten, ruinous, and

defective and improper condition, and by the negligence of the Illinois Central Railroad Company its engines and cars were knowingly allowed to be and remain in an improper, defective, and dangerous condition, and its said engine and cars to be so constructed as to be in a dangerous condition, and this improper and dangerous condition of the said road, premises, and cars of the defendants was known to the said defendants, and at the time of this said wreck and accident, same were being operated in a careless manner by all of said defendants; and the said Durbin, by his negligence in running, ordering, and directing said train, contributed to the cause of said accident; and the plaintiff says that the negligence of the defendant (Chicago, St. Louis & New Orleans Railroad Company) in its maintenance of its tracks, roadbed, engine, cattle guards, rails, ties, fences. etc., as above set out, and together with the negligence of the said Illinois Central Railroad Company, in directing and permitting its engine, cars, and road to be operated while in a defective and dangerous condition, and the negligence of the said conductor, in ordering and directing the running and management of said train, and in failing to give proper directions, all together, jointly caused said wreck and killed the plaintiff's said intestate,'' etc. That his intestate was a young, vigorous man, an excellent locomotive engineer, intelligent, sober, industrious, of most excellent habits and prospects, and making and saving large sums of money, and, by the joint gross negligence of the defendants in thus causing his death, the plaintiff has been damaged in the sum of $25,000. The plaintiff further alleged that his place of residence, as well as that of his intestate, to the date of his death. was in Central City, Muhlenburg county, Kentucky;

that the defendant Illinois Central Railroad Company was a corporation organized under the laws of the state of Illinois, and the defendant Chicago, St. Louis & New Orleans Railroad Company, was a Kentucky corporation organized under the laws of this State, and the defendant F. J. Durbin was a resident and a citizen of the state of Kentucky.

The defendant Illinois Central Railroad Company filed its petition and bond for removal of the case to the federal court, alleging a separable controversy between it and appellee determinable between them without either of its codefendants, and alleging joinder of its codefendants in fraud of federal jurisdiction. The court refused to transfer the case. Then each of the defendants filed a separate answer, denying all material allegations of the petition. The issues being completed, a trial was had, which resulted in a verdict for appellee as against the Illinois Central Railroad Company for $8,250, and on peremptory instructions the jury found for the other two defendants. The Illinois Central Railroad Company appeals, and assigns the following reasons for reversal: First, the admission of incompetent and the rejection of competent evidence; second, erroneous instructions to the jury; third, the refusal of the court to give a peremptory instruction to find for it; fourth, the refusal of the court to surrender jurisdiction to the federal court.

The third assignment for reversal necessitates our stating the substance of the evidence. Appellee's testimony conduces to show the following facts: The deceased was a young man, about 29 years old, sober, industrious, of good habits, strong, and in good health. That he had been following the avocation of railroad engineer for about eight years. That his run was

from Central City, his home, to Paducah, Ky. That he was killed on appellant's line of road which connects with the main line at Princeton, Ky., and extends to Evansville, Ind., known as the Ohio Valley Line. The deceased had only made about two trips on this line, both at night; one about three weeks before, and the one on which he was killed. When the train reached a flag station called "Harding," in Union county, Ky., the engine struck a mule, turned over, and the deceased was instantly killed. No one lived at this station. A public road passes by it, crossing the railroad at right angles. From this public road running south, the way the train was going, a distance of about 150 or 200 yards to a culvert, the road is fenced on either side; but there were no cattle guards at the public road, and loose stock, according to the evidence, passed into this cul-de-sac, and grazed on either side of the track. The proof shows that this mule came upon the track in front of the engine, and made a few jumps south, and then was struck by the engine and cut in two, leaving the front part on the left of the track between the ends of two ties. From this point the evidences of the small wheels that supported the pilot were noticed on the ties for 15 or 20 feet, and from that point the large drive wheels of the engine were thrown from the rails, and from that point to 20 or 30 feet beyond the culvert the ties, rails, and everything were swept clean. The proof shows that the engine was fitted with a stub pilot, instead of with a standard pilot; that the stub pilot stood four or more inches above the rails, and had but the slightest slant; that the standard pilot was very slanting, extended out in front of the engine four or five feet, and rested only two inches above the rails; and that, with it in use, when the track

is properly constructed, and reasonably well ballasted
it was almost impossible for stock when struck to
get under the train—the pilot would knock them off.
The testimony showed, without much contradiction,
that the portion of the track described had never been
ballasted; and that the ties were laid on dirt; that much
of it had been washed away, so that it did not come to
the top of the ties; that a track is properly ballasted
when crushed stone, gravel, or cinders are tamped
under, upon, and between the ties, and up to a point
about even with the top of the rails (and such was the
condition of the track at each end of this cul-de-sac);
and that this track as constructed left about 14 or 16
inches from this stub pilot to the dirt between the
ties, which made the chances of clearing the track of
stock when struck by the pilot doubtful.   It was
proved by some of the section hands on the road
that this part of the track had been in that condition
for a long time, and the general superintendent of the
road had had his attention called to it, and had been
requested to furnish material to put that part of the
road in reasonably safe condition, but had failed to
do so up to the time of the accident.   They also stated
that the track as laid would often get out of align-
ment, and that they were compelled, by the use of
jackscrews, to force it back.   Many witnesses testified
that they had been at this point when trains passed,
and saw that the track was insecure; that engines
and cars would wabble in passing over it, would sink
in some places, and rise in others, would mash some
ties down, and water and mud would gush up over
them; that when trains had passed, the rails would
straighten and raise some of the ties two inches from
the earth.   Many witnesses examined the conditions
there after the wreck, and about all of them testify

that there were many rotten ties. Some of them stated that more than one-half were rotten, that some of them had rotted into two pieces, and so rotten that they could pull the spikes from them with their fingers.

The most serious complaint made by appellant to the instructions is that the court gave an instruction on punitive damages. Section 241 of the Constitution, and section 6 of the Kentucky Statutes of 1903 provide that, whenever the death of a person results from an injury inflicted by negligence, damages may be recovered for such death; and, when the negligence is gross, punitive damages may be recovered. It is certain from the evidence that those in charge of the railroad knew of its defective condition; and it was gross negligence on appellant's part to direct or suffer its trains to be run from 20 to 30 miles an hour at this point, knowing also that they had failed to put cattle guards at the public crossing, and that stock might be expected in this cul-de-sac at any time. Appellant's conduct in this evidenced a reckless disregard of the rights and safety of those whose business required them to travel over this road. There were no errors in the instructions prejudicial to the substantial rights of appellant; nor did the court commit any prejudicial error in the admission or rejection of evidence.

The main contention of appellant is that the court erred in refusing to surrender jurisdiction to the federal court. There is no question but that the petition of appellee, the administrator of deceased, stated a joint cause of action against all three of the defendants. This is conceded. Upon the filing of the petition by appellant for removal of the case to the federal court, it was the duty of the judge of the State court to determine from the petition and record

whether or not there was presented a federal case; if so, it was his duty to proceed no further, but to remove the case to the federal court, and it was the duty of that court to hear the proof on the jurisdictional facts, or questions raised by the petition for removal, and determine whether the federal court or State court had jurisdiction of the case. In the case of Crehore v. Ohio & Mississippi Railway Co., 131 U. S. 240, 9 Sup. Ct. 692, 33 L. Ed. 144, the court, Justice Harlan delivering the opinion, said: "If the case be not removed, the jurisdiction of the State court remains unaffected, and, under the act of Congress, the jurisdiction of the federal court could not attach until it becomes the duty of the State court to proceed no further. No such duty arises unless a case is made by the record that entitles the party to a removal." In the same opinion the court further said: "It thus appears that a case is not, in law, removed from the State court, upon the ground that it involves a controversy between citizens of different states, unless, at the time the application for removal is made, the record, upon its face, shows it to be one that is removable. We say, upon its face, because 'the State court is only at liberty to inquire whether, on the face of the record, a case has been made which requires it to proceed no further;' and 'all issues of fact made upon the petition for removal must be tried in the circuit court'" — meaning the federal court. See the following cases, which announce the same rule: Stone v. South Carolina, 117 U. S. 430, 6 Sup. Ct. 799, 29 L. Ed. 962; Stevens v. Nichols, 130 U. S. 230, 9 Sup. Ct. 518, 32 L. Ed. 914; Phoenix Ins. Co. v. Pechner, 95 U. S. 183, 24 L. Ed. 427; Powers v. Railroad Co., 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673. And the following decisions of this State recog-

nizing the same rule: McCabe's Adm'x v. Maysville & Big Sandy Railroad Co., 112 Ky. 861, 23 Ky. Law Rep. 2328, 66 S. W. 1054; Rutherford v. Illinois Central Railroad Co., 120 Ky. 15, 85 S. W. 199, 27 Ky. Law Rep. 397; and Illinois Central Railroad Co. v. Jones, 118 Ky. 158, 80 S. W. 484, 26 Ky. Law Rep. 31. In this last case the court said: ''If both the State and federal courts could try the same facts-as to jurisdiction, different conclusions might be reached, and unseemly conflict and confusions result. To avoid these, the Congress has wisely made the condition of the federal court's jurisdiction to depend upon the filing in the State court in due time of a petition, in which, according to the unbroken current of the decisions of the federal courts construing the act, all necessary facts to show prima facie a right in the petitioner for the removal must be set out, not as conclusions of law, or such necessary facts must affirmatively and explicitly appear elsewhere in the record when the application to the State court for the removal is made. Crehore v. Ohio R. R. Co., 131 U. S. 240, 9 Sup. Ct. 692, 33 L. Ed. 144; Freeman v. Butler (C. C.) 39 Fed. 1 (opinion by Barr, District Judge); Jackson v. Allen, 132 U. S. 27, 10 Sup. Ct. 9, 33, L. Ed. 249; Smith v. Horton (C. C.) 7 Fed. 270; Amory v. Amory, 95 U. S. 186, 24 L. Ed. 428; Weed Sewing Machine Co. v. Smith, 71 Ill. 204; Chester v. Chester (C. C.) 7 Fed. 1; Burlington, etc., Ry. Co. v. Dunn, 122 U. S. 517, 7 Sup. Ct. 1262, 30 L. Ed. 1159; Railway Co. v. Ramsey, 22 Wall (U. S.) 322, 22 L. Ed. 823; Grace v. Am. Central Ins. Co., 109 U. S. 278, 3 Sup. Ct. 207, 27 L. Ed. 932; Gold W. & W. Co. v. Keyes, 96 U. S. 199, 24 L. Ed. 656; Carson v. Dunham, 121 U. S. 421, 7 Sup. Ct. 1030, 30 L. Ed. 992; Removal Cases, 100 U. S. 457, 25 L. Ed.

593; Yulee v. Vose, 99 U. S. 539, 25 L. Ed. 355. The truthfulness of these facts may then, and not till then, be inquired into in the federal court. As the petition for the removal and the record in this case did not in our opinion state facts sufficient to confer jurisdiction upon the United States circuit court, that tribunal had not the right to inquire into their truthfulness, nor to hear evidence of other facts not alleged in the record or the petition for removal, and by adding such evidence to the insufficient allegations find the needed jurisdictional facts."

The question now for consideration is: Did the court err in refusing a removal of the case to the federal court? As stated, it is conceded that a joint cause of action was alleged in the petition of appellant against all three of the defendants. The common-law distinction between different forms of action has been abolished by our Code of Practice, and all persons who are liable for a wrong may now be sued jointly in this State in an action to recover for negligence. See McCabe's Adm'x v. Maysville & Big Sandy Railroad Co., supra. The petition for removal denies the negligence charged in the petition. This is not a jurisdictional fact under all the authorities. In an attempt to show that the Chicago, St. Louis & New Orleans Railroad Company was joined as defendant with it wrongfully, it was alleged in the petition for removal that the Chicago, St. Louis & New Orleans Railroad Company was empowered to construct and lease to the petitioner its railroad mentioned in plaintiff's petition; and stated that it was so empowered by an act of the General Assembly of the Commonwealth of Kentucky, long prior to the adoption of the present Constitution of the Commonwealth of Kentucky, which act of the General Assem-

bly became a law on the 24th day of February, 1882; and that, pursuant to such powers, the Chicago, St. Louis & New Orleans Railroad Company, being the owner, leased to the petitioner all of the railroad mentioned in the petition, and parted with all dominion over it; and that your petitioner has since the lease (1897) continuously operated the railroad exclusively, and the lessor never at any time operated it. Even if this plea could be made available, the petition was defective; it was an attempt to plead a private statute. Section 119 of our Civil Code of Practice provides: "In pleading a private statute, it shall be sufficient to refer to it by stating its title and the day on which it became a law." The title of the act is not stated in the petition, nor is there any attempt to state it. The contents of the act is not stated. The petitioner only alleged its conclusions as to the contents, which were that the Chicago, St. Louis & New Orleans Railroad Company had the power to construct and lease to the petitioner the railroad. The same remarks will apply to the alleged contract of lease, the contents of which is not stated in the petition, nor a copy filed. The conclusion was that the lease gave it dominion over the road and under same it operated the road. It is admitted that the Chicago, St. Louis & New Orleans Railroad Company was and is the owner of the road, that it still maintains its corporate organization and existence, but, instead of operating the road itself directly, has bargained with the Illinois Central Railroad Company to run it for a compensation, as we must suppose, as the terms of the lease are not stated in the petition for removal. Even if the act and the lease had not been defectively pleaded, the result would be the same. The Chicago, St. Louis & New Orleans Railroad Company was given

a franchise by the State,. and it therefore assumed certain burdens, and, under the Constitution and laws of this State, it cannot by a lease exempt itself from responsibility for the torts of itself and lessee. In the case of Lee v. Southern. Pacific R. R. Co., 47 Pac. 932, 116 Cal. 97, 38 L. R. A. 71, 58 Am. St. Rep. 140, the court said: "Where a statute authorizing leases contains no clause exempting in any respect the lessor from liability, it is well settled that the lessor still remains liable for an injury resulting from the negligent omission of a duty owed by it to the public, such as the proper construction of its roads, station houses," etc. Section 203 of the State Constitution is in these words:

"No corporation shall lease or alienate any franchise so as to relieve the franchise or property held thereunder from the liability of the lessor or grantor, lessee or grantee, contracted or incurred in the operation, use or enjoyment of such franchise or any of its privileges." The court in construing this section of the Constitution, in the case of McCabe's Adm'x v. Maysville & Big. Sandy R. R. Co., supra, said: "The franchises of a corporation are its property. The declaration that these, in case of a lease or alienation, shall not be relieved from the liability of the lessor. or grantor, lessee or grantee, contracted or incurred in the use of the franchise, or any of its privileges, is, in substance, a. declaration that the corporation shall not be relieved of such liability, for its existence is inseparable from all of its franchises. Under this section, therefore, no lease made by a corporation can exempt it from liability for the wrongs of the lessee. If the lease in question was made after the adoption of the Constitution, it would not exempt the lessor from liability; * * * but, if it was made before

the adoption of the Constitution, the result is the same.'' In the same case, the court again said: ''The defendant company, therefore, in reality still enjoys the benefits of its charter, and cannot be permitted to escape its corresponding obligations. * * * A grant to a corporation of a right to lay out, construct, and operate a railroad is the grant to the corporation of the capacity to exercise a portion of the power of sovereignty for the purpose of making pecuniary profit to itself. This is its franchise. Such grants are never made, except at the request of the corporation. In return, the corporation is held to have promised to pay just damages to any person injured by any want of care in using the right so granted. As the grant is of a public right, in which every one of the public is a sharer, so the promise is to each one of the public. A due regard for the public rights obviously requires that a corporation which has asked for and received such a grant shall not be absolved from its promises, except by an act of the Legislatture to that effect, so distinct and unequivocal as not to be open to mistake. 'Nothing should be left to inference. * * * The sanction of the Legislature was given to the contract as made by the parties, but added nothing by way of exemption from the primary responsibility of the lessor. It was under a positive duty and obligation to the public, and the consent of the Legislature to the making of the lease did not imply a discharge from the duty and obligation. * * * Where a corporation seeks to escape from the burden imposed upon it by the Legislature, clear evidence of a legislative assent to such exoneration should be found.''

It will be seen from the petition of removal that there is no allegation that the act authorizing the

lease even attempted to relieve the lessor from its primary responsibility to the public; and the court in the McCabe Case, continuing, said: "After conferring upon a corporation the right of eminent domain, with many other special privileges which the Legislature is empowered to grant only in consideration of its duty and obligation to serve the people by affording them the means of safe as well as speedy transportation for themselves and their property, the State cannot be held to have abdicated its right to protect the patrons of the road who are under its care by the strained construction of a naked power to lease. Such a power does not carry with it the authority to the lessor to absolve itself and transfer its duties and obligations to another, whether able or unable to respond in damages for its wrongs and defaults.' See, to the same effect, Balsley v. Railroad Co., 119 Ill. 68, 8 N. E. 859, 59 Am. Rep. 784; Singleton v. Southwestern R. R., 70 Ga. 464, 48 Am. Rep. 574; Tillett v. Railroad Co., 118 N. C. 1031, 24 S. E. 111; Railroad Co. v. Morris, 68 Tex. 59, 3 S. W. 457; Chollette v. Railroad Co., 26 Neb. 169, 41 N. W. 1106, 4 L. R. A. 135; Parr v. Railroad Co., 43 S. C. 197, 20 S. E. 1009, 49 Am. St. Rep. 826; Pennsylvania Co. v. Ellett, 132 Ill. 654, 24 N. E. 559; Stephens v. Railroad Co., 36 Iowa, 327; Bower v. Railroad Co., 42 Iowa, 546; Railroad Co. v. Lee, 71 Tex. 538, 9 S. W. 604. * * * If it be true, as the decisions with substantial unanimity admit, that the lessor railway remains liable for the discharge of its duties to the public, unless expressly exempted therefrom by statute, it seems difficult to conceive its absence of liability in any event, except, perhaps, where the plaintiff is suing upon an express contract made with him by the lessee corporation. Is it not as much a public duty on the part of

the railway corporation to operate its trains without negligence as it is to receive all freight offered for transportation, or to carry all passengers who offer to pay the regular rates, or to keep its tracks and station houses in safe condition? In truth, we do not know of any duties of a railway corporation which are of a private character. * * * By its acceptance of the franchise conferred by the State, the corporation assumed the corresponding burdens thereby imposed. These franchises it could not transfer to another without distinct legislative authority. The grant of power to lease its property is one thing; the grant of absolution from its responsibility is another, and is not to be inferred from a mere power to lease the road, where the corporation still retains its existence and the enjoyment of its franchises in the rents, for such grants are strictly construed, and, as against the public, are never extended by any construction. In the case before us, there is only a grant to the lessor of power to contract for the operating of the road. The company enjoys all its franchises in the fruits of the contract. There is nothing in the provision to show that the Legislature had in mind authorizing the company to divest itself of its franchise, or permitting it, while enjoying them or their fruits, to be acquitted of responsibility for their abuse, without regard to the financial ability of the lessee or his amenability to suit."

But it is said that this responsibility of the lessor does not apply to the employes of the lessee of the road, that the lessor owed no duty to them, and that they are not members of the public in the sense used in the decisions on that subject. It is true that the courts in part have made this distinction, but have only extended the rule and exempted the lessor from

torts of the lessee resulting from the negligent operation and handling of its trains and the general management of the leased property, but hold the lessor bound for an injury resulting from the negligent omission of some duty owed to the public, such as the proper construction of its road, station houses, etc. In the case of Swice's Adm'x v. Maysville & B. S. Ry. Co., 116 Ky. 253, 24 Ky. Law Rep. 1142, 75 S. W. 278, this distinction was recognized to be the true rule.

The case of Charles A. Lee v. Southern Pacific Railroad Company, 47 Pac. 932, 116 Cal. 97, 38 L. R. A. 71, 58 Am. St. Rep. 140, appears to have been well considered, and the authorities carefully collated. In that opinion the court said: "In Nugent v. Boston, C. & W. R. Co., 80 Me. 62, 12 Atl. 797, 6 Am. St. Rep. 151, the defendant railroad, under express authority of law, had leased its road to the Portland & Ogdensburg Railroad, which latter road was engaged in its management and operation. A brakeman of the Portland & Ogdensburg sued defendant for personal injuries received by reason of the negligent construction of an awning at a station house built by defendant company. The case received elaborate consideration. The action of the brakeman against the owning road was sustained, and the rule deduced in the following language: 'Herein, as we think, lies the true distinction which marks the dividing line of the lessor's responsibility. In other words, an authorized lease, without any exemption clause, absolves the lessor from the torts of the lessee resulting from the negligent operation and handling of its trains and the general management of the leased road, over which the lessor could have no control. But for an injury resulting from the negligent omission of some duty

owed to the public, such as the proper construction of its road, station houses, etc., the charter company cannot, in the absence of statutory exemption, discharge itself of legal responsibility.' In Arrowsmith v. Nashville & D. R. Co. (C. C.) 57 Fed. 165, the same rule is enunciated, and numerous authorities cited in support thereof. Indeed, a somewhat extended examination of the cases justifies the conclusion that this principle, at least, is accepted without conflict. An analysis of the case of East Line & R. R. Co. v. Culberson, 72 Tex. 375, 10 S. W. 706, 3 L. R. A. 567, 13 Am. St. Rep. 805, a case upon which respondent strongly relies, will disclose that the law there enunciated is not only not at variance with the principle above mentioned, but embodies a distinct recognition of it. In that case an employe of the operating company sued the lessor company, claiming damages for injuries sustained by reason of defective appliances furnished by the operating company. The court held, and very properly, that such an action would not lie against the lessor company, and said: 'It may be that if the injury had occurred by reason of a defect in the roadbed or track, and not by reason of a defect in the engine, the company charged with the duty of keeping up the road would be liable; but if it were true that the injury was caused entirely by another company operating the owner's road, and was inflicted upon one of its own employes by reason of a defect in machinery entirely under its control, it is difficult to see upon what principle of policy or justice the lessor should be held liable, merely because it owned the road. In all cases where a valid lease is found (or, as in this dicussion where it is assumed), the lessor company owes no duty whatsoever as an employer to the operatives of the lessee company. The claim of rela-

tionship of employer and employe under such circumstances is a false claim and quantity. It does not exist. The responsibility of the lessor company, when it attaches, does not spring from this relationship, but arises from a failure of the lessor company to perform its duty to the public, of which public the employe of the operating company may be regarded as one. Thus, in those cases where the injury has resulted to an employe of the operating company by reason of the negligence of a fellow servant, or of want of care of the lessee company in managing the road, or in negligence in furnishing suitable appliances, these and kindred matters being entirely and exclusively within the control of the lessee company, for injury which may result the lessor is in no way responsible. But where injury has resulted to an employe of the operating company by reason of a failure of the lessor to perform its public duty, as in the failure to construct a safe road, as is here charged, the injured employe may sue the lessor company, as one of the public, for its failure to perform that duty, and not because, between himself and the lessor company, the relation of employe and employer, or any relation of contractual privity, exists. As is said in Nugent v. Boston & M. R. Co., 80 Me. 62, 12 Atl. 797, 6 Am. St. Rep. 151, where the brakeman of the lessee road was injured by reason of the defective construction of the station house by the charter company; 'Our opinion, therefore, is that the plaintiff had the lawful right, as brakeman on the train of the P. & O., to pass and repass by the Bethlehem station house of the defendant which, therefore, owed a duty to him to construct and maintain its station house there in such a reasonably safe manner that its awning would not injure him while in the performance

of his duty with due care, and that a negligent breach of that duty by the defendant, having resulted in a personal injury to the plaintiff without fault on his part, he is entitled to maintain this action therefor.' So, here, the charge against the defendant is that the injury resulted by reason of its imperfect construction and maintenance of the rails and tracks of its road. The verdict of the jury for plaintiff is its declaration that the charge was substantiated by the evidence, and the nature of the omission or dereliction is such as to entitle the plaintiff to compensation from the defendant herein for injuries which may have resulted to him by reason of it.''

This case is very similar to the one at bar, in which it was alleged and proved that the intestate's death was the proximate result of the failure of the lessor to perform its public duty in its failure to construct a safe roadbed. In the cases of the Illinois Central R. R. Co. v. Coley, 89 S. W. 234, 1 L. R. A. (N. S.) 370, 28 Ky. Law Rep. 336, Dudley v. Illinois Central R. R. Co., 96 S. W. 835, 29 Ky. Law Rep. 1029, and P. A. Underwood's Adm'r v. Illinois Central R. R. Co., 103 S. W. 322, 31 Ky. Law Rep. 595, this court recognized the rule to be that, although the petition for removal of the case failed to allege any jurisdictional facts which would authorize the removal of the case, yet, if on the trial it is developed that the plaintiff in the action had not reasons for believing that the resident defendants in the action were responsible to him, in damages, and it is made evident that their joinder as defendants with the nonresident was made for the purpose of depriving the federal court of jurisdiction to try the case, then this court will reverse and remand, with directions to the lower court to remove the case to the federal

court; but the case at bar does not come within this principle. The appellee not only had reasonable grounds to believe that the resident corporation was responsible to him, but he had actual grounds to believe it. At the close of the evidence, and when the court gave peremptory instructions in behalf of the resident corporation and F. J. Durbin, appellant, Illinois Central Railroad Company again filed its petition and bond, and asked for a removal of the case to the federal court, which motion the court overruled, and in our opinion properly. Instead of the evidence showing an improper joinder of defendants, it made it plain that the joinder was proper.

For these reasons the judgment of the lower court is affirmed.

Petition for rehearing by appellant overruled.