McALLISTER v. CHESAPEAKE & O. RY. CO. et al.

(District Court, E. D. Kentucky. May 27, 1912.)

1. REMOVAL OF CAUSES (§ 36*)—JOINDER OF RESIDENT DEFENDANT—PLEADING.

In an action in a state court by a citizen of the state against a nonresident lessee railroad company and its resident lessor to recover for the death of plaintiff's intestate who was struck and killed by a train operated by the lessee, if the petition does not state a cause of action against the lessee, it cannot against the lessor, which will prevent the removal of the cause by its codefendant, since the lessor's liability can only follow the primary liability of the lessee.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 79; Dec. Dig. § 36.*]

2. REMOVAL OF CAUSES ( 49*)—JOINT LIABILITY OF DEFENDANTS—LAW GOVERNING.

When a suit is brought in a state court by a resident against two defendants, one a nonresident and the other a resident, in determining whether there is a joint liability on the part of the defendants which will prevent a removal by the nonresident defendant, the law of the state where the suit is brought governs.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 95–99; Dec. Dig. § 49.*]

3. RAILROADS (§ 259*)—LEASES—LIABILITIES OF LESSOR FOR TORTS.

Under the law of Kentucky as settled by decision, the owner of a railroad operated by another company under a valid lease is liable for an injury to a third person if the cause of injury was the omission of a duty owed to the public generally and imposed by its charter, but not if it was the omission of a duty owed the person injured by the lessee growing out of the particular relations between them.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 414, 415, 802–816; Dec. Dig. § 259.*]

4. RAILROADS (§ 259*)—LEASES—LIABILITY OF LESSOR FOR TORTS.

Under the law of Kentucky, a lessor railroad company is not liable for the injury of a trespasser on the track through the negligence of employés of its lessee in operating a train.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 414, 415, 802–816; Dec. Dig. § 259.*]

5. REMOVAL OF CAUSES (§ 36*)—JOINT ACTION FOR TORT—REMOVAL BY ONE DEFENDANT.

Under the decisions of the Court of Appeals of Kentucky, as well as the federal decisions, an action for tort brought in a state court by a citizen of the state against two defendants, one a citizen of the state and the other a nonresident, is removable by the nonresident defendant where the petition fails to state a cause of action against the resident defendant.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 79; Dec. Dig. § 36.*]

At Law. Action by Miriam McAllister, administratrix of A. J. McAllister, deceased, against the Chesapeake & Ohio Railway Company and the Maysville & Big Sandy Railroad Company. On motion to set aside order overruling motion to remand to state court. Overruled.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Allen D. Cole, of Maysville, Ky., and Wm. T. Cole, of Greenup, Ky., for plaintiff.

Worthington, Cochran & Browning, of Maysville, Ky., for defendants.

COCHRAN, District Judge. This cause is before me on motion to reconsider motion to remand, heretofore overruled. The grounds of my action, in overruling motion to remand, may be found in the opinion delivered by me on application for a preliminary injunction in a suit in equity between the parties hereto, in which the defendant Chesapeake & Ohio Railway Company, the nonresident and removing defendant, sought an injunction against the further prosecution of this suit in the state court after the filing therein of its petition and bond for removal, which application I sustained; my action in so doing being affirmed by the Court of Appeals for this circuit. The opinion is reported in connection with that of the appellate court. McAlister v. Chesapeake & Ohio Ry. Co., 157 Fed. 740, 85 C. C. A. 316, 13 Ann. Cas. 1068.

The affirmance can hardly be said to have gone further than to approve my action in granting the preliminary injunction. The question whether the cause was removable was not necessarily involved, and the appellate court withheld any expression of opinion on that subject.

The basis of the motion to reconsider is certain decisions of the Supreme Court of the United States and of the Sixth Circuit Court of Appeals, rendered since the order overruling the motion to remand, which, it is claimed on behalf of plaintiff, established that I erred in so doing. The decisions relied on are as follows, to wit: 1. C. R. R. Co. v. Sheegog, 215 U. S. 308, 30 Sup. Ct. 101, 54 L. Ed. 208; C., B. & Q. R. R. Co. v. Willard, 220 U. S. 413, 31 Sup. Ct. 460, 55 L. Ed. 521; Enos v. Ky. D. & W. Co., 189 Fed. 342, 111 C. C. A. 74.

[1] I am led, by the earnestness with which it is claimed that the case should be remanded, to consider the matter afresh. And, at the outset, the case as presented by plaintiff's pleadings should be well understood. Her intestate was killed by being struck by a train on defendants' railroad. The resident and nonremoving defendant, Maysville & Big Sandy Railroad Company, was the owner of the railroad and the nonresident and removing defendant, Chesapeake & Ohio Railway Company, was in possession thereof and operating it under a lease from its codefendant. The lease was made pursuant to legislative authority and was valid. McCabe's Adm'r v. M. & B. S. R. R. Co., 112 Ky. 861, 66 S. W. 1054. The allegation as to the place where decedent was, when struck, is that he was "at or near a public crossing." It is the same as if it had been alleged that he was not on the crossing, and was therefore a trespasser. This has been so decided by the Court of Appeals of Kentucky. In the case of Davis, Adm'r, v. Chesapeake & Ohio Ry. Co., 116 Ky. 144, 75 S. W. 275, Judge Paynter said:

"The averment that she was killed 'at or near' the private crossing should be construed that she was killed at a place on the track other than the

crossing, because pleadings are to be construed most strongly against the pleader."

And again:

"But, under the rule that a pleading must be construed most strongly against the pleader, the averment that she was killed 'at or near' the crossing is equivalent to the averment that she was not killed on it, but near the crossing; hence she was a trespasser."

This being so, there was no duty on the part of the nonresident and removing defendant, the lessee, to be on the lookout for him so as to be able to give him any warning of its train's approach or to exercise any care as to him until his presence was discovered. Chesapeake & Ohio Ry. Co. v. See (Ky.) 79 S. W. 252; Chesapeake & Ohio Ry. Co. v. Nipp, 125 Ky. 49, 100 S. W. 246. The negligence charged is failure to discover his presence and to give him suitable warning of the train's approach, and excessive speed. The allegation is that the "employés saw, or by the exercise of reasonable diligence could have seen," the decedent. This was the same as if it had been alleged that decedent was not seen in time to avoid striking him. In the case of King v. Creekmore, 117 Ky. 172, 77 S. W. 689, Judge Paynter said:

"The amended petition supplements the original petition with the averment that the defendant knew of the defective and dangerous condition of the boiler, or by the exercise of ordinary care could have known of it at the time it was leased. It will be observed that it is not averred that defendant knew (without the alternative statement that by the exercise of ordinary care he could have known) of the defective and dangerous condition of the boiler when leased to Warren; therefore, there is no charge that he was guilty of acting in bad faith. Taking the alternative averment, in the light of the rule that a pleading must be construed strongly against the pleader, the only charge is that defendant was guilty of negligence in failing to exercise ordinary care to discover the defect in the boiler."

It follows, therefore, that plaintiff fails to state a cause of action against the nonresident and removing defendant, the lessee. And none being stated against it, none was stated against the resident and nonremoving defendant, the lessor. For if the former was not liable for the death of plaintiff's intestate, the latter certainly was not. It is only through and because of the lessee's liability that it is possible for the lessor to be liable in such a case.

[2] But for the time being, I pass this phase of the case and proceed to determine the removability of the case on the assumption that a cause of action is stated against the nonresident and removing defendant, the lessee, e. g., that it is alleged that decedent's presence was discovered in time to avoid striking him and it wantonly ran him down. In that case would the cause have been removable? This depends on two subordinate questions. One is whether it results therefrom, i. e., from such a cause of action being stated against the nonresident and removing defendant, the lessee, that one is stated against the resident and nonremoving defendant, the lessor. The other is whether if it does not so result, and there is therefore no cause of action stated against the latter, this circumstance, in and of itself, is sufficient to render the cause removable.

The determination of the first of these two questions must be in accordance with the law as laid down by the Court of Appeals of Kentucky. For it is now well settled by the Supreme Court of the United States that, when a suit is brought in a state court by a nonresident against two defendants, one a nonresident and the other a resident, between the latter of whom and the plaintiff, therefore, there is no diversity of citizenship, in determining whether there is liability on the part of the resident and nonremoving defendant and that jointly with the other defendant, which, if so, will render the cause nonremovable, the law of the state where the suit is brought governs. This was so recognized and held in the Sheegog and Willard Cases, supra, in each of which there was a suit against the lessee and lessor of a railroad to recover damages for a personal injury caused by the negligence of the lessee.

What we are concerned with, then, is the law of this state, as so laid down, as to the liability of a lessor of a railroad for an injury caused by the negligence of the lessee where there is a valid lease. For, as heretofore stated, such is the case we have here. Three cases have arisen and been decided by the Court of Appeals of Kentucky involving this question. They are the cases of McCabe v. M. & B. S. R. R. Co., supra; Swice v. M. & B. S. R. R. Co., 116 Ky. 253. 75 S. W. 278; Illinois Central R. R. Co. v. Sheegog, 126 Ky. 252. 103 S. W. 323. The first two were suits against the two defendants here. It is certain from these decisions that the lessor is not liable from the mere fact that the lessee is liable. This is so, because, though in two of these three cases, to wit, the McCabe and Sheegog Cases, it was held that the lessor was liable, in the other, to wit, the Swice Case, it was held that he was not. The thing to be ascertained from them is the line of demarcation between cases where the lessor is liable and those where he is not. In the McCabe Case plaintiff's intestate was a highway traveler and was struck by a passenger train operated by the lessee. The ground of the decision was that the duty of caring for highway travelers was imposed on the lessor by its charter, and the grant of power to lease should not be construed as including a grant of absolution from that duty in case of a lease. Judge Hobson said:

"The obligation to fence the track for the protection of stock or to receive passengers or freight or carry them safely is no more a duty of the lessor imposed upon it by its charter than its duty to avoid injury to the traveling public in the discharge of its functions, as in this case. By its acceptance of the franchises conferred by the state, the corporation assumed the corresponding burdens thereby imposed. These franchises it could not transfer to another without distinct legislative authority. The grant of power to lease the property is one thing; the grant of absolution from its responsibility is another, and is not to be inferred from a mere power to lease the road, where the corporation still retains its existence and the enjoyment of its franchises in the rents."

In the Swice Case the plaintiff's intestate was a servant of the lessee, in its employ at one of its coal docks, and he lost his life by its negligence in relation to an elevated platform on which he had to walk in the performance of his duties. The ground of the decision that the lessor was not liable was the absence of any such duty to-

wards the servants of the lessee as existed in the case of highway travelers.

In the McCabe Case, in referring to cases where it had been held that the lessor was not liable for injuries to the servants of the lessee by reason of the lessee's negligence, Judge Hobson said:

"Those cases rest on the idea that the duty owed to the servant by his employer grows out of the contract of service which is voluntarily entered into by the servant, and that he does not stand to it like the public."

In the Swice Case, in referring to the decision in the McCabe Case, Judge Hobson, said:

"It was there held that the lessor company continued liable to the public for the discharge of the obligation imposed on it by law."

In support of the decision reached in the Swice Case he quoted from a note to Lee v. Southern Pacific R. R. Co., 58 Am. St. Rep. 140, these words:

"The duties which are owed by a railroad company to its servant are not duties owed to him in common with the public, but grow out of the contract of service. He assumes the relation of servant to his employer, and out of it arises the reciprocal obligations from one to the other. It seems to us that the relation of the servant of the company operating the road to the owner is very different from his relation to his employer, and that the relation of the owner of the road to him is different from its relation to the general public."

The Sheegog Case was like the Swice Case in that plaintiff's intestate was a servant of the lessee and lost his life by the negligence of the latter. The negligence there, however, was a failure to provide a safe roadbed as to which a duty was owed by the lessor to the public. It was on this ground that it was held that the lessor was liable. Judge Nunn said:

"But it is said that this responsibility of the lessor does not apply to the employés of the lessee of the road; that the lessor owed no duty to them; and that they are not members of the public in the sense used in decisions on that subject. It is true that the courts in part have made this distinction, but have only extended the rule and exempted the lessor from torts of the lessee resulting from the negligent operation and handling of its trains and the general management of the leased property, but hold the lessor bound for an injury resulting from the negligent omission of some duty owed to the public, such as the proper construction of its road, station houses," etc.

And again:

"It was alleged and proven that the intestate's death was the proximate result of the failure of the lessor to perform its public duty in its failure to construct a safe roadbed."

In brief, the point of decision in the Sheegog Case was that the death of plaintiff's intestate was caused by the lessor's own wrongful act, and the lessor was not held liable for the wrongful act of the lessee.

[3] It is to be gathered from these three cases that the distinction between those cases where the lessor is liable and those where it is not is this: If the cause of the injury was the omission of a public duty, i. e., of a duty owed the public generally, then the lessor

is liable; but, if not, and it was the omission simply of a duty owed the person injured growing out of the particular relation between him and the lessee, then the lessor is not liable notwithstanding he may be said to be a member of the public. In the case of Hukill v. M. & B. S. R. R. Co. (C. C.) 72 Fed. 745-752, Judge Taft said:

"The only cases where liability in tort is enforced against the lessor company are those where the person injured is a member of the public, with the right to rely upon the discharge of the public duties assumed by the lessor company in the operation of the road. Such persons are shippers, who have a common-law right to demand of the common carrier that he shall carry their goods safely, passengers, who have a common-law right to demand of the common carrier that they shall be carried safely to their destination, and travelers upon the highway, who have a statutory and common-law right to such a reasonable and careful operation of the road as shall not unduly injure them in their lawful rights."

These words are applicable here with this qualification, owing to the Sheegog Case, that, though the person injured may not be a shipper, passenger, or highway traveler, but a servant of the lessee, yet if the negligence which caused the injury was the omission of a duty owed the public generally and of which a shipper or a passenger or a highway traveler could complain, if his property or he is injured, the lessor is liable.

[4] This places us in a position to decide whether the resident and nonremoving defendant in this case, the lessor, is liable for the death of plaintiff's intestate had it been caused by the negligence of the nonresident and removing defendant, the lessee, in the operation of its freight train. He was neither a shipper, passenger, nor highway traveler. He was a trespasser. He was not where he had the right to be, as was the servant in the Sheegog Case. His death was not caused by the omission on such defendant's part of a public duty, i. e., of a duty owed the public generally. It was caused by the omission of a duty owed to him alone, i. e., of not wantonly running him down, after his presence on the track was discovered, which, for the sake of the argument, we are assuming to have been alleged. In this particular the case is exactly like the Swice Case, where the death of plaintiff's intestate was caused by the omission of a duty owed him alone by reason of his being in the lessee's employ. In each the death was caused by the omission of a duty owed the decedent alone. They differ only in the basis of such duty. In the Swice Case the basis was the contract relation between decedent and the lessee. Here it is the knowledge by the lessee of the decedent's peril, assumed to be alleged. In the Sheegog Case and cases cited therein, in support of the conclusion there reached, it was emphasized that the employé, who was injured by the defective roadbed, had a right to be where he was when injured. As for instance, in the case of Nugent v Boston R. R. Co., 80 Me. 62, 12 Atl. 797, 6 Am. St. Rep. 151, cited in the Sheegog Case, it is said:

"The only materiality which attaches to the contract between the companies is to make certain that the plaintiff was lawfully and not a trespasser on the defendant's road."

In the case of Lee v. Southern Pacific R. R. Co., 116 Cal. 97, 47 Pac. 932, 38 L. R. A. 71, 58 Am. St. Rep. 140, also cited therein, the court says:

"Plaintiff has pleaded and shown to the satisfaction of the jury that he was not a trespasser upon the railroad at the time and place where he met his injury, but that he was there under a lawful employment; that in pursuance of his vocation he met with an injury occasioned by defendant's defective construction of its roadbed for which injury the defendant is in law responsible."

Plaintiff's intestate when injured was not a shipper or a passenger or a highway traveler. He was not where he had any right to be, as was the servant injured in the Sheegog Case, and in the Nugent Case and in the See Case. It must be held, therefore, that the plaintiff's pleadings do not state a cause of action against the resident and nonremoving defendant, the lessor, even though it be assumed that it states one against the nonresident and removing defendant, the lessee. This is so because there is no liability on the former's part for the alleged negligence of the latter, and it has not itself been guilty of any negligence. In the McCabe and Sheegog Cases the lessor itself had been guilty of negligence, and this was the real ground upon which it was held liable; not that it was responsible for the lessee's negligence.

Is then this circumstance sufficient in itself to make the cause removable? In support of the position that it is may be cited the following federal decisions, to wit: Nelson v. Hennessey (C. C.) 33 Fed. 113; Rivers v. Bradley (C. C.) 53 Fed. 305; Hukill v. M. & B. S. R. R. Co. (C. C.) 72 Fed. 745; Kelly v. Chicago R. R. Co. (C. C.) 122 Fed. 290; Bryce v. Southern Ry. Co. (C. C.) 122 Fed. 709; Williard v. Spartansburg R. R. Co. (C. C.) 124 Fed. 796; Axline v. Toledo R. R. Co. (C. C.) 138 Fed. 169; Chicago R. R. Co. v. Stepp (C. C.) 151 Fed. 908; Lockard v. St. Louis R. R. Co. (C. C.) 167 Fed. 675; Marach v. Columbia Box Co. (C. C.) 179 Fed. 412; Floyt v. Shenango Furnace Co. (C. C.) 186 Fed. 539.

These cases are all personal injury cases. In the first, the Nelson Case, the two defendants sued were, respectively, the owner and the tenant of a building, which had fallen and caused the injury. Plaintiff's claim that each defendant owed the duty of caring for the safety of the building, and hence sued them together. In the last two, the Marach and Floyt Cases, the two defendants sued bore towards each other the relation of master and servant. The person injured was a servant also. The master in the one case was the operator of a box factory, the injury being caused by a defective platform; and, in the other, he was the operator of a coal mine, the injury being caused by a defective ladder. Plaintiff's claim in the Marach Case was that each defendant owed the duty of caring for the safety of the platform, and in the Floyt Case of caring for the safety of the ladder. The duty of the master relied on in each case was its nondelegable duty to provide a reasonably safe place in which to work, and that of the servant, to whom it had intrusted the performance of such duty, to inspect and to discover and report the

defect. Hence the plaintiff in each instance sued the master and servant together.

In the cases intervening between the first and last two cases, i. e., in the Rivers, Hukill, Kelly, Bryce, Williard, Axline, Stepp, and Lockard Cases, the injury was received in connection with the operation of a railroad train. In the Rivers, Kelly, Bryce, Stepp, and Lockard Cases, the two defendants sued, as in the Marach and Floyt Cases, bore towards each other the relation of master and servant, and in the Rivers Case, as in those cases also, the person injured was a servant also. He was a brakeman, and the servant sued was the engineer of the train. The injury was caused by the deafness and defective vision of the latter, i. e., by a defective engineer, and a defective car. The duties of the master whose breach was relied on were its nondelegable duties of providing competent servants and reasonably safe appliances. It is not apparent what duty on the part of the engineer, it was claimed, had been breached, unless it was not to act as such in his defective condition. But under a claim of liability on the part of both for the injury plaintiff sued both. In the Kelly and Bryce Cases the person injured was a passenger. In the Kelly Case he was injured by the explosion of the locomotive, and in the Bryce Case by the derailment of the train. The servant sued in the one case was the yardmaster, and in the other the engineer of the train. The duty of the master whose breach was relied on in each case was its duty as a common carrier to exercise the highest degree of care for the safety of its passengers. That of the yardmaster in the Kelly Case was to inspect and to discover and report the defect in the locomotive which caused the explosion, and that of the engineer in the Bryce Case to operate the train with due care for the safety of the passengers, to each of whom the performance of its duty had been intrusted by the master. There was no allegation in the Bryce Case of any specific negligence on the engineer's part; the allegation being general, i. e., that the derailment was caused by his negligence. In the Stepp and Lockard Cases the person injured was run into by the train whilst on the track, presumably in each instance a trespasser, as here. The servant sued in each instance was the engineer of the train. The duty of the master whose breach was relied on in each case was to be on the lookout for persons on the track, whether trespassers or not, prescribed by statute in the particular jurisdiction where it arose. The performance of this duty had been intrusted by the master to the engineer, but the statute prescribed no duty on the engineer personally to be on the lookout. The claim was, however, that he so owed such duty, and hence he was sued along with the master.

In the Hukill, Williard, and Axline Cases the two defendants bore towards each other the relation of lessee and lessor, the same as here; in the Hukill Case the two defendants being the two defendants here. In each case the person injured was a servant of the lessee, the same as the Swice Case, decided by the Kentucky Court of Appeals, and heretofore cited; the Hukill and Swice Cases being alike in all particulars. The duty on the part of lessee, whose breach

was relied on, was a certain one of the nondelegable duties owed by the master to the servant. Seemingly there was no claim that the lessor had breached any duty owed by it to the person injured; the claim going no farther than that the lessor was liable because the lessee was liable.

In the owner and tenant case, i. e., the Nelson Case, the owner was the nonresident and the tenant the resident defendant; in the master and servant cases, i. e., the Rivers, Kelly, Bryce, Stepp, Lockard, Marach, and Floyt Cases, the master was the nonresident and the servant the resident defendant; and in the lessee and lessor cases, i. e., the Hukill, Williard, and Axline Cases, the lessee was the nonresident and the lessor the resident defendant. In each of the entire eleven cases the removal was at the instance of the nonresident defendant, and the question which each presented was whether the presence of the resident defendant as a party affected the removability of the cause.

In the owner and tenant case, i. e., the Nelson Case; in the first of the master and servant cases, i. e., the Rivers Case; and in each of the lessee cases, i. e., the Hukill, Williard, and Axline Cases—the resident and nonremoving defendant had no connection whatever with the negligence charged against the nonresident and removing defendant and upon which the claim of liability on its part was based. It was through no act or omission of the one that the other can be said to have been negligent and hence liable. In the lessee and lessor cases, i. e., the Hukill, Williard, and Axline Cases, it was the other way. The resident and nonremoving defendant, the lessor, was claimed to be liable because of the negligence of the nonresident and removing defendant, the lessee. In the owner and tenant case, i. e., the Nelson Case, and in the first of the master and servant cases, i. e., the Rivers Case, neither defendant was chargeable or claimed to be chargeable with the other's negligence.

In all of the master and servant cases, except the Rivers Case, i. e., in the Kelly, Bryce, Stepp, Lockard, Marach, and Floyt Cases, the master, the nonresident and removing defendant, had intrusted to the servant, the resident and nonremoving defendant, the performance of the duty which it owed the person injured, i. e., the passengers in the Kelly and Bryce Cases, the trespassers in the Stepp and Lockard Cases, and the coservants in the Marach and Floyt Cases, and whose breach was relied on as making it liable, and it was through his failure to perform same that the claim of its breach arose. The servant sued, however, in thus bringing about liability on the part of the master, was, as held therein, himself guilty of no breach of duty owed by him to the person injured. This possibly was an error in the Bryce Case. In all of these six master and servant cases, except that case, the duty of the servant sued was that of discovery, and this duty, it was held, he owed, not to the person injured, but to the master. In the Bryce Case it would seem that the servant sued owed the person injured, to wit, the passenger, the duty of operating the train with due regard to his safety.

In none of these eleven cases, then, had the resident and nonre-

moving defendant, except, possibly, in the Bryce Case, been guilty of a breach of any duty owed by him to the person injured. In the master and servant cases, except the Rivers Case, however, he was guilty of a breach of duty; but, except, possibly, in the Bryce Case, it was a duty owed to the nonresident and removing defendant, the master, and not to the person injured. In no one of these cases, therefore, was a cause of action stated against such defendant, except, possibly, in the Bryce Case; the only ground for holding that none was stated therein being that no particular negligence was specified. And this circumstance that no cause of action was so stated was in and of itself held to be sufficient to render the cause removable.

It has likewise been so held by the Court of Appeals of Kentucky in a number of decisions, to wit: C., N. O. & T. P. Ry. Co. v. Robertson, 115 Ky. 858, 74 S. W. 1061; Davis v. C. & O. R. R. Co., supra; Swice v. M. & B. S. R. R. Co., supra; Slaughter v. Nashville R. R. Co. (Ky.) 91 S. W. 744. And it is the well-settled practice in this state, as sanctioned by numerous decisions of that court, that, though a cause of action may be stated against the resident and nonremoving defendant, yet if on the trial before the jury the plaintiff fails to present sufficient evidence to justify submitting the question to the jury, the trial should cease at once and the case be removed to the federal court. The earliest case where this practice was approved is that of Illinois Central R. Co. v. Coley, 121 Ky. 385, 89 S. W. 234, 1 L. R. A. (N. S.) 370. To the same effect are the cases of Dudley v. Illinois Central R. R. Co., 127 Ky. 221, 96 S. W. 835, 13 L. R. A. (N. S.) 1186, 128 Am. St. Rep. 335; Underwood, Adm'r, v. Ill. Cent. R. R. Co. (Ky.) 103 S. W. 322; Haynes' Adm'r v. C., N. O. & T. P. R. R. Co., 145 Ky. 209, 140 S. W. 176.

[5] I will not analyze any of these Kentucky decisions, as I have done with regard to the federal decisions cited; but there can be no question that the law as settled by the Court of Appeals of Kentucky is that the fact that the plaintiff's petition fails to state a cause of action against the resident and nonremoving defendant, in and of itself, without more, renders the cause removable.

The why of this position has not been much discussed. No reference thereto whatever is made in the decisions of the Kentucky Court of Appeals. They simply take it for granted that this is so. In the Nelson Case the position is placed on the ground that the resident and nonremoving defendant is a merely nominal party. Judge Brewer said:

"It is claimed that this is an action for a joint tort, and therefore, unless both defendants have a right of removal, this court cannot take jurisdiction, and the case must be remanded. This is undoubtedly true if the complaint discloses a joint tort. But it is also true that, where there has been a tort committed by one party, the plaintiff cannot join another and merely nominal party as defendant so as to prevent a removal to which the real defendant is entitled."

Then, as to the tenant's liability and the result of his nonliability, he said:

"Clearly so far as disclosed he was under no responsibility for the injury. He was therefore improperly joined. The only real party is the owner of

the building, and, as he is a citizen of another state, he is entitled to a removal to this court."

This idea was accepted in the Rivers, Bryce, Williard, and Axline Cases.

In the Bryce Case Judge Simonton said:

"It appears from these authorities that no actionable charge of negligence has been made against these two defendants, the conductor and engineer. No cause of action has been stated against them. This being so, the only controversy in the complaint is that of the railway company, and the insertion of the names of these two defendants in the complaint cannot prevent the removal of the cause into this court."

And in the Williard Case the same learned judge said:

"It is clear from all that has been said that the Spartanburg Union & Columbia Railroad Company has no interest whatever in the issue in this case, that it is neither a necessary nor a proper party. This being so, the Southern Railway Company, the only other defendant, being the only party against whom a cause of action is stated and a citizen of the state of Virginia, had the right to remove the cause into this court. * * * It is unnecessary to consider whether the Spartanburg Union & Columbia Railroad Company is a sham party, or that its name was inserted to defeat the jurisdiction of this court—a proposition the court will not willingly entertain and would be loath to believe."

In the Lockard Case Judge Rogers placed it on the ground of separable controversy. He said:

"It follows that there is no cause of action stated against the engineer in any aspect of the complaint. The real cause of action in this suit is one against the railroad company only, in which Daniels is made a party without any semblance of liability, joint or otherwise. It matters not, therefore, whether the intent of the pleader was to make Daniels a party to defeat the jurisdiction of the court or not, since in any event, without reference to the purpose, the complaint states no cause of action, as stated, against him, and, no cause of action being stated against him, the railroad company had the right to remove the cause against it to this court. In other words, the cause of action is made separable because there is no cause of action stated against Daniels."

In Floyt v. Shenango Furnace Co., Judge Amidon placed it on the ground that the joinder of the resident and nonremoving defendant was fraudulent. After referring to the point decided in the case of Wecker v. National Enameling Co., 204 U. S. 176, 27 Sup. Ct. 184, 51 L. Ed. 430, 9 Ann. Cas. 757, a case of fraudulent joinder, due to the allegation of a fact known to be untrue, for the purpose of stating a cause of action against the resident and nonremoving defendant on the face of the petition and thus preventing a removal, he said:

"If a showing by affidavit that the plaintiff has no cause of action as against the employé will sustain a removal by the other defendant, surely that result ought to follow when the complaint on its face makes the same disclosure. There can be no higher evidence that the joinder is fraudulent than the fact that on the face of the complaint, under well-established principles of law, no cause of action is stated against the employé."

According to this the basis of the position in question is that there has been a fraudulent joinder, and seemingly every case of a failure to allege a cause of action against such defendant is a

case of fraudulent joinder. This is hardly consistent with the earlier decision of the same court held by a different judge in the case of Jacobson v. Chicago R. R. Co. (C. C.) 176 Fed. 1004. That was a personal injury case also. The two defendants sued bore towards each other the relation of master and servant, and the person injured was a servant also. The master was the operator of a railroad, and the injured servant a coal shoveler at a certain station on the line. The injury was caused by a defective platform on which he was at work. The duty of the master, whose breach was relied on, was its nondelegable duty of providing a reasonably safe place in which to work and that of the servant, to whom it had intrusted the performance of this duty, was to inspect and to discover and report, or possibly to repair. Hence plaintiff sued both together. The master was the nonresident and removing defendant, and the servant the resident and nonremoving defendant. The cause was removed at the instance of the former. It claimed that the duty of the resident and nonremoving defendant, the servant, was a duty owed the master and not the injured servant, that in consequence of this no cause of action was stated against such defendant, and that therefore the cause was removable. It is thus seen that the case is exactly like the later Floyt Case. It was held that the cause was not removable, and it was remanded to the state court. Judge Willard said:

"But it is said by the defendants that, even if the defendant Hutton was charged with the duty of inspecting this platform, the complainant states no cause of action against him, for it alleges only a duty imposed upon him in favor of his employer, the railroad company, and for a breach of that duty by a failure to inspect no cause of action arises in favor of the plaintiff. In other words, for nonfeasance an action lies only in favor of the master, and not in favor of a third person; the theory being that an employé in such cases owes no duty to such third person. This contention presents a question of law, and it must be determined, where that question should be decided, which court has the right to say whether the complaint states a cause of action or not?"

Referring to the case of Alabama Southern Ry. Co. v. Thompson, 200 U. S. 206, 26 Sup. Ct. 161, 50 L. Ed. 441, 4 Ann. Cas. 1147, which was a case where a cause of action was stated against the resident and nonremoving defendant, as well as the nonresident and removing defendant, and the sole question was whether the two were jointly liable and hence could be sued together, and it was held that the claim of the plaintiff that they were jointly liable rendered the cause not removable, he said:

"The case of Alabama Southern Ry. Co. v. Thompson was decided on the principle that the cause of action was what the plaintiff in good faith said it was."

From this he argued:

"If that is true when the question is whether the liability is joint or several, it must be true also when the question is whether the facts alleged show any liability at all on the part of the defendant employé. If the plaintiff in good faith says that they did, the case cannot be removed. So upon

this branch of the case, as upon the other, the point to be determined is whether the plaintiff has acted in good faith in asserting that Hutton is liable to him for failure to inspect. An examination of the authorities will show that this is a doubtful question. * * * A plaintiff, who claims under such circumstances as appear in this case mere nonfeasance creates a liability in his favor, cannot be said to make such claim in bad faith, even though the court should be of the opinion that the complaint would be held bad on demurrer presented by the employé."

I doubt whether a case of fraudulent joinder is ever presented in the absence of fraud in the matter of allegation of facts on which liability on the part of the resident and nonremoving defendant is based, i. e., except where on the facts alleged a cause of action against such defendant is stated and they have been alleged with the knowledge that they were untrue or without reasonable ground for believing that they were true and with the animus to affect the removability of the cause by such fraud. If this is so, then in such cases the question of good faith relates solely to the allegation of fact and not to the claim in law, for everybody is conclusively presumed to know what the law is. It is certain that no question of good faith or fraudulent joinder arises when the sole basis for the claim that the one is lacking and the other exists lies in the motive of the plaintiff in joining the resident and nonremoving defendant. Judge Taft made this clear in the Hukill Case, supra. And it may be that no such question arises when the sole basis for such claim is to be found in plaintiff's claim as to matter of law. I find it difficult to gather from the case of Alabama Southern Ry. Co. v. Thompson that, where the plaintiff's pleading alleges facts showing liability on part of both defendants and it is not claimed that such facts, in so far as· they show liability on part of the resident and nonremoving defendant, have been fraudulently alleged, a case of fraudulent joinder can grow out of the mere claim that there is joint liability so as to justify suing the two defendants together. The impression which the case makes on me is that in such a case the claim of joint liability by·plaintiff is conclusive in all cases, except, perhaps, where the highest court of the state where the suit is brought has previously decided that there is no joint liability, and, in such a case, the idea of fraudulent joinder is, perhaps, not needed to make the cause removable. But it seems to me that in determining whether or not the eleven federal decisions and those of the Kentucky Court of Appeals heretofore cited are on principle sound, i. e., whether or not the mere fact that no cause of action is stated against the resident and nonremoving defendant is sufficient, in and of itself, to render the cause removable, the language of that portion of the Removal Act which is relevant must be reckoned with, and that its true meaning is all that is relevant. There is nothing in it about fraudulent joinder, separable controversy, or nominal parties. It is in these words:

"And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be

fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the Circuit Court of the United States for the proper district."

This presupposes that there may be in a suit "a controversy which is wholly between citizens of different states and which can be fully determined as between them" which does not cover all that is therein. Where such is the case, it is provided that "one or more of the defendants actually interested in such controversy" may remove the suit. Where, then, the plaintiff fails to allege facts which present a cause of action against the resident and nonremoving defendant, is it or not to be said that there is a controversy in the suit to which such defendant is no party and which is wholly between the plaintiff and the nonresident and removing defendant and which can be fully determined as to them? It is true that in such a case the plaintiff is claiming that the former as well as the latter is liable for the injury complained of; but, as no facts are alleged showing liability on his part, does it not follow that the controversy as to the liability of the latter, under the facts alleged, is one that is wholly between plaintiff and the latter and one that can be fully determined as between them within the meaning of the provision?

I find it somewhat difficult to answer these questions satisfactorily to myself, and the relevant decisions do not yield much help in answering them, because, so far as my reading has gone, I do not find that any court has come to close quarters with the exact meaning of this provision of the Removal Act and attempted to point out exactly what is. covered by it and what not. It is well settled by the Supreme Court of the United States that in determining whether a particular case is covered thereby the view must be limited to the allegations of the plaintiff's pleading. But it has laid down no clear line between those cases which are covered by it and those which are not. It has never had occasion to deal with the question now under consideration. It would seem that according to its view but few cases can arise coming within its purview. This appears from Judge Lowell's citation and characterization of the decisions of the Supreme Court dealing with the removability of a suit because of the presence in it of what is called a separable controversy in the case of Regis v. United Drug Co. (C. C.) 180 Fed. 201. Yet, if the necessities of this case were such as to require my taking position on the question as to whether the fact that no cause of action is stated against the resident and nonremoving defendant renders the cause removable, I would feel compelled to give the numerous decisions of the Supreme Court thereby referred to a very careful consideration. Each separately would have to be subjected to a very close and keen criticism, and, after so doing, they would have to be viewed together; this in order to extract their essence. Otherwise, I would not feel properly equipped to deal with the question. And this is a work that should be done by some one.

This possible view of the matter, however, occurs to me in this connection. In the case of Powers v. C. & O. R. R. Co., 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673, Mr. Justice Gray said:

"The cause of action is the subject-matter of the controversy, and that is, for all purposes of the suit, whatever the plaintiff discloses it to be in his pleadings."

If, then, there is no cause of action stated against the resident and nonremoving defendant, i. e., if the cause of action stated against the nonresident and removing defendant is not a cause of action against him or it, also, can it be said that he or it is a party to the controversy between the plaintiff and the nonresident and removing defendant as to the cause of action stated against it, and, if not, is not that controversy one that is wholly between such defendant and plaintiff, and that can be fully determined as between them within the meaing of the provision? But the necessities of this case do not require that I should take such position.

It is apparent, from the recent decisions of the Supreme Court, that, in such cases as we have here, it shows much respect to the position of the highest court of the state where the case arises, if, indeed, it does not regard it as conclusive. Now, it is as well settled in Kentucky, as it is possible for it to be, that, where the plaintiff's pleading states no cause of action against the resident and nonremoving defendant, the cause is removable. This can only be because it is considered that in such a case the plaintiff's pleading presents a controversy which is wholly between him and the nonresident and removing defendant and which can be fully determined as between them. And, if that is really so, there can be no question that the case is covered by that provision of the Removal Act. But, if for such a suit to be removable, it is essential that fraud be made out in the claim that as a matter of law on the facts alleged there is liability on the part of the resident and nonremoving defendant, this case presents such fraud, in that there was no reasonable basis for the claim that the resident and nonremoving defendant here, the lessor, was liable for the injury complained of. It is true that the Kentucky Court of Appeals has never held that the lessor of a railroad is not liable for an injury to a trespasser thereon caused by the lessee in the operation of one of its trains. But the principles upon which it held that the lessor was liable in the McCabe and Sheegog Cases, and was not liable in the Swice Case require that it should so hold, whenever such question shall be presented to it. And there seems to be no room for reasonable doubt as to this. These considerations lead me to the conclusion, on the assumption upon which I have been proceeding, that this cause was removable. That assumption is that the plaintiff's pleadings here state a good cause of action against the nonresident and removing defendant.

Does, then, the fact that they do not so state, in that the negligence charged is failure to discover the presence of plaintiff's intestate on the track in time to have warned him of the approach of the train and thus to have avoided the injury, make any

difference? I do not see why it should. The resident and nonremoving defendant is still no party to the controversy to which the nonresident and removing defendant is a party, and that controversy is wholly between it and plaintiff and can be fully determined as between them; and the same ground exists for saying that the joinder of the resident and nonremoving defendant was fraudulent.

It remains to say a word or two as to the cases cited and relied on by plaintiff. The Sheegog Case was carried to the Supreme Court of the United States from the Kentucky Court of Appeals, whose decision therein has been heretofore referred to, and that court affirmed the decision of the lower court. If, as we have found, that decision is not against the removability of this cause, its affirmance by the Supreme Court is not. The Supreme Court held that it was bound to accept the decision of the lower court that the resident and nonremoving defendant, the lessor, was liable for the death of plaintiff's intestate, a servant of the nonresident and removing defendant, the lessee, caused by the negligent performance of the duty owed the public to provide a safe roadbed, and that such liability was joint with that of the removing defendant the lessee, as sound, and that, such joint liability existing, the cause was not removable even though the joinder had been made for the express purpose of preventing a removal. In such a case there can be no such thing as a fraudulent joinder.

The decision in the Willard Case was substantially the same. though the liability of the resident and nonremoving defendant, the lessor, was placed on a different ground. The cause originated in one of the courts of original jurisdiction in the state of Illinois, from whence it was removed to the federal court. That court having taken jurisdiction, its judgment was reversed by the Circuit Court of Appeals for the Seventh Circuit for want of jurisdiction, and its judgment was affirmed by the Supreme Court on certiorari. The law of the state of Illinois as determined by its Supreme Court is that the lessee of a railroad is the mere servant or agent of the lessor.

In the case of Chicago R. R. Co. v. Hart, 209 Ill. 414, 70 N. E. 654, 66 L. R. A. 75, cited in the Williard Case, it is said:

"Though a railroad company may, by lease or otherwise, intrust the execution of its charter powers and duties to a lessee company, this court has expressed the view that the lessee company, while exercising such chartered privilege or chartered powers of the railroad company, is to be regarded as the servant or agent of the lessor company."

Of course, in jurisdictions where this is the law, it must be held that the lessor, in all cases, is liable for the lessee's negligence. So in the Williard Case, Mr. Justice Harlan said:

"It results that, upon the face of the record, the action throughout was proceeded on as a joint action, and that there was no separable controversy in such an action entitling the Iowa corporation as a matter of law, to remove the case from the state court. And it cannot be predicated of the plaintiff that he fraudulently and improperly made the Illinois corporation a codefendant with the Iowa corporation when such a charge is negatived, as a matter of law, by the fact that the plaintiff was, as we have seen, entitled

under the laws of Illinois, where the cause of action originated and within which the road was located, to bring a joint action against the Illinois and Iowa companies."

It must be accepted, therefore, that there is nothing in this decision of the Supreme Court, as there was nothing in the Sheegog Case, requiring a remand of this action to the state court.

The Enos Case decided by the appellate court of this circuit, was not a suit against a lessee and lessor of a railroad to recover of both for the lessee's negligence. It was a suit against a master and servant to recover of both. The servant was the resident and nonremoving and the master the nonresident and removing defendant. The injured person was a servant also. It arose in this state and was brought in the circuit court for Jefferson county, from whence it was removed to the Circuit Court of the United States for the Western District. Motion to remand having been overruled, and the suit having resulted in judgment for defendant, the case was carried to the appellate court. It was there held that the suit was not removable, and the judgment of the lower court was reversed with directions to remand to the state court. The plaintiff's petition stated a good cause of action against both defendants; that against the resident and nonremoving defendant, the servant, being his personal negligence, alleged to have caused the injury, and that of the nonresident and removing defendant, the master, the negligence of the servant. Not otherwise was a case stated against the latter. That being so, the cause was not removable in the absence of a fraudulent joinder. This had been recognized by the lower court, and the sole ground of removal was that there had been a fraudulent joinder. This was attempted to be made out by showing that the injury was due to the negligent performance by the person injured of the work he was doing when injured, and not to any negligence of the resident and nonremoving defendant, and that there was no reasonable basis for claiming otherwise. If the claim as to the cause of the injury was correct, then the plaintiff had no cause of action against either defendant, for the nonresident and removing defendant was not liable except through the negligent act of the resident and nonremoving defendant. It was held that a fraudulent joinder in such a case could not be made out by showing that plaintiff had no reasonable basis for claiming that he had a cause of action against either defendant. Judge Knappen said:

"The Circuit Court in denying the motion to remand practically found that plaintiff was affirmatively shown to have no cause of action against any of the defendants. The assertion of fraudulent joinder of O'Hearn and Bittner necessarily involves the proposition that the cause of action against even the resident defendant was fraudulently asserted. But the rule which permits a removal to the federal court in case of a fraudulent joinder of defendants whose presence destroys diversity of citizenship cannot be carried to the extent of permitting such fraudulent joinder to be inferred from the fact only that no cause of action is found to exist against any defendant, resident or nonresident, or of permitting a removal in a case where the negligence of the corporate defendant can be made out only by proof of negligence of the servant alleged to be fraudulently joined but against whom a cause of action is stated."

I see nothing in this decision that militates against the position here taken. In view of these considerations, therefore, I am constrained to overrule the motion to set aside the order overruling the motion to remand.