GULF & S. I. R. CO. v. GULF REFINING CO. et al.

(District Court, S. D. Mississippi, Jackson Division.   September 4, 1919.)

No. 94. .

1. REMOVAL OF CAUSES ⟨=⟩49(3)—WHAT CONSTITUTES SEPARABLE CONTROVERSY AUTHORIZING REMOVAL.

 While a defendant has no right to say that an action shall be several which plaintiff elects to make joint, yet if the complaint in a joint action of tort by a resident plaintiff against a resident and nonresident defendant fails to allege facts showing a joint cause of action, or alleges facts showing separate causes, or fails to allege facts showing any cause of action against the resident defendant, there is a separable controversy, which entitles the nonresident defendant to remove the cause.

2. CONTRIBUTION ⟨=⟩5—WRONGDOER RESPONDING IN DAMAGES CANNOT OBTAIN CONTRIBUTION FROM ANOTHER WRONGDOER.

 Where wrongdoers are equally culpable, one who has been made to respond in damages for the injury cannot maintain an action for contribution against another.

In Equity.   Suit by the Gulf & Ship Island Railroad Company, a corporation organized under the laws of Mississippi, against the Gulf Refining Company, a corporation organized under the laws of Pennsylvania, and J. L. Carr and Mrs. May Blackwell, citizens of Mississippi, which was begun in the chancery court of Smith county, Miss., but was removed by the named nonresident defendant to the federal court.   On motion to remand.   Motion denied.

T. J. Wills, of Raleigh, Miss., for plaintiff.

Hirsh, Dent & Landau, of Vicksburg, Miss., for defendants.

HOLMES, District Judge.   This is a motion by the plaintiff to remand the cause to the state court.   The suit was filed by the Gulf & Ship Island Railroad Company, a Mississippi corporation, seeking indemnity or contribution from the defendants, the Gulf Refining Company, a Pennsylvania corporation, and J. L. Carr and Mrs. May Blackwell, individual citizens of Mississippi, alleged to be joint tort-feasors with the plaintiff in the commission of an injury which has been fully satisfied solely by the plaintiff.

In the absence of a showing that the resident defendants were fraudulently joined for the purpose of preventing a removal, the facts as stated in the plaintiff's pleading are decisive of the nature of the controversy.   Chicago & Alton R. R. Co. v. McWhirt, 243 U. S. 422, 37 Sup. Ct. 392, 61 L. Ed. 826.   Accordingly on this motion we must look to these facts to ascertain whether the case stated is one of joint liability against all of the defendants, or whether the facts reveal a separable controversy wholly between the plaintiff and the nonresident defendant.

The Gulf Refining Company extracts, manufactures, and sells at wholesale and retail kerosene, gasoline, and other petroleum products. Pursuant to orders previously given to one of its traveling salesmen,

⟨=⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the Gulf Refining Company intended to ship to J. L. Carr, a retail country merchant, a drum of kerosene, and to E. Burnham three drums of gasoline. The drums were of iron, and were designated by stock numbers indented into the metal. The drum of kerosene intended for J. L. Carr carried the stock number 23937, and one of the drums of gasoline intended for E. Burnham bore the number 9770; the other numbers of the gasoline drums being immaterial. The bills of lading, waybills, and freight bills were made out correctly, and showed that Carr was to get the properly numbered drum of kerosene and Burnham the properly numbered three drums of gasoline. Both consignments were destined to stations on the line of the Gulf & Ship Island Railroad Company, the last of two connecting carriers over which the shipments were routed. In addition to being identified by stock numbers indented in the iron drums, which corresponded with the numbers on the bills of lading, waybills, and freight bills, shipping tags were prepared by the consignor's clerk; a cream-colored tag bearing the address, "J. L. Carr, Taylorville, Miss.," to be attached to the drum of kerosene, and three red tags for the gasoline drums, with the inscription, "E. Burnham, Magee, Miss."

And here is where the initial error occurred. Through the negligence of the nonresident and removing defendant's employé, the cream-colored tag was attached to drum numbered 9770, containing gasoline, and one of the red tags was attached to drum numbered 23937, containing kerosene. With this conflict between the addresses on the tags and the stock numbers on the drums and shipping bills, the three drums of gasoline and one of kerosene were delivered to the Mississippi Central Railroad Company, the initial carrier, and by it delivered to the plaintiff, the last carrier, which did not notice, or neglected to regard, the said conflict, and, in accordance with the addresses on the tags, delivered the drum of gasoline numbered 9770 to Carr, at Taylorville, and the drum of kerosene numbered 23937 and two drums of gasoline to Burnham, at Magee.

The resident defendant J. L. Carr thereafter carried the drum so delivered to his store, and, with the assistance of his clerk, the other resident defendant, Mrs. May Blackwell, poured its contents into a kerosene tank used for retailing, and, as alleged in the bill of complaint:

"With the information from the defendant oil company, charging them with notice of the likelihood of the said oil company's having made a mistake in the shipment, sold the said oil as kerosene, and wrongfully and unlawfully represented the said oil to be kerosene, when by the use of ordinary care and caution they could and should have known that it was gasoline."

But it is not alleged what the information, "charging them with notice of the likelihood of the oil company's having made a mistake," consisted of, nor how by "the use of ordinary care and caution they could and should have known that it was gasoline." These are mere conclusions of the pleader, who should state the facts from which he makes these deductions.

Among the purchasers at Carr's store of this gasoline for kerosene was Archie Yelverton, to whom the resident defendant, Mrs. May

Blackwell, sold a gallon of supposed kerosene, which, while being used in his home as kerosene for illuminating purposes, because of its highly volatile and inflammable characteristics, exploded and burned to death two of his daughters.

Suits for the wrongful deaths were instituted against the Gulf Refining Company and J. L. Carr. The nonresident and removing defendant induced the plaintiffs in these suits to dismiss them and file other suits against the Gulf & Ship Island Railroad Company as sole defendant in each. These suits resulted in judgments against the railroad company for sums aggregating $50,000, which were satisfied in full by the payment of $17,500 in settlement of both judgments, and $2,500 in payment of court costs and reasonable attorney's fees.

The railroad company, by suit in equity, is now demanding indemnity in the sum of $20,000, the amount actually paid in satisfaction, upon the theory that its negligence, in not having detected the error of the oil company in mislabeling the drums and thereby preventing the sale by the other two defendants of gasoline for kerosene, was slight and secondary to the negligence of the defendants, who were primarily liable for the injuries for which the plaintiff has been compelled to pay damages.

The record and voluminous briefs bristle with many interesting questions of remote and proximate cause, joint and several tort-feasors, and contribution and indemnity between wrongdoers; but for the purpose of this motion it is only necessary to determine whether there is a separable controversy between the plaintiff and nonresident defendant which will warrant a removal.

[1] It has been repeatedly held that the cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings. While it is true that a defendant has no right to say that an action shall be several which a plaintiff elects to make joint, yet if the complaint fails to allege facts showing a joint cause of action, or alleges facts showing separate causes, or fails to allege facts showing any cause of action against the resident defendant, then there is a separable controversy which entitles the nonresident defendant to remove.

In reversing the case of McAllister v. Chesapeake & Ohio Railroad Co. (D. C.) 198 Fed. 660, the Supreme Court, in 243 U. S. at page 302, 37 Sup. Ct. 274, 61 L. Ed. 735, examines first the liability of the resident defendant, and having reached the conclusion that the complaint stated a case against the resident defendant, said:

"There remains only the question whether the amended petition states a cause of action against the lessor" (nonresident and removing defendant).

And, having come to the conclusion that the lessor was also liable, it was said:

"Since the amended petition states a joint cause of action against the Kentucky company and the Virginia company, the claim that there is a separable controversy in the case, justifying removal by the latter company, must fail; and since no facts are alleged in support of the charge that the joinder of the two companies is fraudulent, except that it was made for the purpose of preventing removal to the federal court, this claimed reason for removal must

also fail (Illinois Central R. R. Co. v. Sheegog [126 Ky. 252, 103 S. W. 323, affirmed 215 U. S. 308, 30 Sup. Ct. 101, 54 L. Ed. 208], and C. & O. Ry. Co. v. Cockrall [232 U. S. 146, 34 Sup. Ct. 278, 58 L. Ed. 544]), supra, and therefore the decision of the District Court is reversed, and the case must be remanded to the state court."

The McAllister Case (D. C.) in 198 Fed. 660, therefore, was reversed, on the ground that the complaint stated a joint cause of action against both defendants, and the inference is strong that, but for that fact, the decision of the lower court would have been affirmed, holding that a cause is removable by the nonresident defendant, where the petition fails to state a cause of action against the resident defendant.

[2] Let us, therefore, see whether a cause of action is here stated against the resident defendants. Where a party wronged has compelled any one of the parties chargeable with the act to compensate him for the injury, the general rule is that the person thus singled out and compelled to bear the loss cannot recover against the others equally liable; but in many instances cases have been taken out of this general rule, and it has been held inoperative, in order that the ultimate loss may be brought home to the principal wrongdoer, who is made to respond for all the damages, and one less culpable, although legally liable to third persons, may be relieved of the damages assessed against him by visiting the entire loss upon the primary and principal offender.

In these cases, which may be called exceptions to the general rule, the principle is well recognized that, where there is no moral turpitude, the law will inquire into the real delinquency of the parties, and place the ultimate liability upon him whose fault has been the primary cause of the injury; but where the negligence of the parties has been of the same character no indemnity or contribution will be allowed.

In this case the negligence of the railroad company consisted in failing to detect the error of the oil company, as it might have done by a proper inspection and comparison of its records, drum numbers, and tags, and as a consequence thereof in delivering gasoline for kerosene. The negligence of the resident defendants (if any is shown by proper averments) consisted in failing to detect the same error of the oil company, and as a consequence thereof in selling gasoline for kerosene. Their wrong was subsequent in time, of the same character, and not more culpable in degree, than that of the railroad company, which because of its fault has been held liable, and as to the resident defendants does not come within that exceptional class which permits it to recover indemnity or contribution. Union Stockyards Co. v. C., B. & Q. Railroad Co., 196 U. S. 217, 25 Sup. Ct. 226, 49 L. Ed. 453, 2 Ann. Cas. 525.

In Washington Gas Co. v. District of Columbia, 161 U. S. at page 329, 16 Sup. Ct. at page 569, 40 L. Ed. 712, it is stated:

"As a deduction from the recognized right to recover over, it is settled that, where one having such right is sued, the judgment rendered against him is conclusive upon the person liable over, provided notice be given to the latter, and full opportunity be afforded him to defend the action."

The allegation that the oil company, being in possession of all the facts and knowing that it was primarily liable for these deaths be-

cause of its initial and real delinquency, had its attorney procure dismissal of the original suits against it and Carr, and by new suits obtain judgments against the railroad company, can have no other legal effect than to obviate the necessity by the railroad company of giving such notice to the oil company and an opportunity to defend said suits. There is no allegation that the resident defendants, or any one authorized by them, took part in this phase of the transaction, or that they had any notice of the pendency of the suits against the railroad company, or opportunity to defend them.

The facts as alleged fail to show that the plaintiff has any cause of action against the resident defendants, and of course it has no joint cause of action against them. Therefore it follows that its claim for indemnity against the nonresident and removing defendant is a controversy which is "wholly between citizens of different states, and which can be fully determined as between them," within the meaning of section 28 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1094 [Comp. St. § 1010]).

The motion to remand should be overruled; and it is so ordered.